IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALBERT SHEELER, <br><br> Plaintiff, <br><br> v. <br><br> REAL BRANDS, INC.; <br> THOM KIDRIN, Chairman, President, and Chief Executive Officer of Real Brands, Inc.; <br> CHRIS RYAN, Chief Financial Officer and Director of Real Brands, Inc., <br><br> Defendants. | Civil Action No.: 25 - 330 - |

**COMPLAINT FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (CIVIL RICO), SECURITIES FRAUD, FRAUDULENT INDUCEMENT, BREACH OF FIDUCIARY DUTY:**

COMES NOW, the Plaintiff, Albert Sheeler ("Plaintiff"), appearing pro se, and brings this action against Defendants Real Brands, Inc., Thom Kidrin, and Chris Ryan (collectively, "Defendants"), alleging civil RICO violations, securities fraud, fraudulent inducement, and other claims arising from Defendants' deceptive business practices, fraudulent misrepresentations, and unlawful concealment of material financial information. In support thereof, Plaintiff states as follows:

I. INTRODUCTION:

This lawsuit arises from an elaborate scheme perpetrated by the Defendants to defraud Plaintiff and other investors through misrepresentations, omissions, and fraudulent inducements concerning the sale and registration of restricted securities in Real Brands, Inc., a publicly traded corporation.

Plaintiff, acting in good faith, invested $375,000, but was only able to recover $73,000 after over a year of struggling to sell his shares at a loss (See Exhibit 9A), resulting in total damages of **$302,000**. Plaintiff made this investment in February 2021 based on fraudulent assurances by Defendants that Plaintiff's shares would be registered and freely tradable within six months.

However, Defendants never registered the shares, failed to make required disclosures in SEC filings, and falsely represented the status of the investment.

## I. JURISDICTION AND VENUE:

1. This Court has subject matter jurisdiction pursuant to:

a. 18 U.S.C. § 1964(c) (Civil RICO) This action arises under the Racketeer Influenced and Corrupt Organizations Act.

b. 15 U.S.C. § 78j & SEC Rule 10b-5 (Securities Exchange Act of 1934) This case involves federal securities fraud claims.

c. 28 U.S.C. § 1331 (Federal Question Jurisdiction) The case presents federal questions regarding fraud and racketeering.

d. 28 U.S.C. § 1332 (Diversity Jurisdiction) Plaintiff is a resident of New York, while Defendant Real Brands, Inc. is incorporated in Delaware, creating diversity.

2. Venue is proper under 28 U.S.C. § 1391(b) because:

a. Real Brands, Inc. is a Delaware corporation.

b. The fraudulent transactions and omitted SEC filings occurred within this jurisdiction.

## III. PARTIES:

3. Plaintiff Albert Sheeler is an investor residing at 14 Boxwood Street, East Hampton, NY 1193.

4. Defendant Real Brands, Inc. is a publicly traded corporation incorporated in Delaware with its principal place of business at 11 Royal Road, Brookline, Massachusetts.

5. Defendant Thom Kidrin is the Chairman, President, and CEO of Real Brands, Inc.

6. Defendant Chris Ryan is the Chief Financial Officer and Director of Real Brands, Inc.

### IV.    FACTUAL BACKGROUND:

7. In February 2021, Plaintiff invested $375,000 in Real Brands, Inc. after being assured by Defendants that the shares would be registered and freely tradable within six months.
   a   On **April 1, 2021**, Defendant **Thom Kidrin** sent Plaintiff the subscription agreement, stating: "You are receiving these shares at a 53% discount to market. Once registered, you will have the ability to sell immediately and realize an instant profit." (See Exhibit 6A).
8. Defendants failed to register the shares as promised and falsely represented that the company had completed all regulatory requirements.

9. SEC filings from 2021, including Form 10-K, failed to disclose Plaintiff's investment, thereby concealing Defendants' fraudulent scheme.

10. Defendants concealed this fraud by omitting material information in the company's SEC filings, including Form 10-K for 2021 and 2022, and misrepresenting the company's financial position. Defendant Chris Ryan, as CFO, was directly involved in falsifying financial records to hide investor transactions.

11. Wire Fraud & Money Laundering: Defendants transmitted fraudulent statements via email and interstate wires and failed to report the investment funds to authorities and other directors, constituting wire fraud (18 U.S.C. § 1343) and money laundering (18 U.S.C. § 1956).

12. Plantiff Investment

**Investment Breakdown:**

**Plaintiff's Investments:**

- **Subscription Agreements:**
    - $200,000 (Exhibit 1)
    - $175,000 (Exhibit 2)
- **Wire Transfers:**
    - $50,000 (Exhibit 3)
    - $175,000 (Exhibit 4)

      o   $150,000 (Exhibit 5)

13. Plantiff brought additional investors.:

    a   Barry Winer: $50,000 (Exhibit 12)

    b   Antonio Khoury $75,000 (Exhibit 11)

    c   Donald Sheeler:50,000 (Exhibit 10A &10 B)

14. The total funds raised in this private placement amounted to $550,000.

15. Plaintiff later learned that Defendants similarly defrauded other investors as well. On **February 3, 2022**, Albert Sheeler wrote to Thom Kidrin and Chris Ryan: "We invested in your company under the agreement that these shares would be 'free trading and eligible for deposit' after our '6-month lockup period.' We have all attempted to deposit our shares with the brokerage you recommended, and we were told that they are not eligible for deposit. We respectfully ask that you provide us with a time tomorrow to get on a conference call so we can work this out together." (See Exhibit 6G).

16. The fraudulent activities undertaken by Defendants include:

a.  Wire fraud (18 U.S.C. § 1343) Using electronic communications to transmit false investment details.

    a   In an email dated **May 13, 2021**, Defendant **Thom Kidrin** fabricated an email that falsely appeared to come from 'Thomas A. Gallo' of 'ATG Holdings, LLC' and sent it to Plaintiff, demonstrating a deliberate act of deception intended to mislead Plaintiff and obscure the true nature of the transaction (See Exhibit 6C).

    b   On **April 6, 2022**, Thom Kidrin wrote to Barry Winer, stating: "My quick response is to go fuck yourself. I owe you nothing... You want to threaten, go right ahead, I will bury you!" (See Exhibit 6L).

b.  Securities fraud (15 U.S.C. § 78j & SEC Rule 10b-5) Misrepresenting the tradability and regulatory status of shares.

    a   On **February 28, 2022**, Barry Winer demanded a resolution: "Unless you can rectify this situation, it appears that I will be forced to wait until June 2022 to deposit my shares into my WD account. This is not what I agreed to and is unacceptable as it stands." (See Exhibit 6I).

    b   On **January 26, 2022**, Plaintiff asked Kidrin, "Will the stock be free trading?" to which Kidrin replied, "144 shares always have a minimum of a 6-month lockup. No public company can sell free trading shares below market, that's illegal." (See Exhibit 6F).

    c   On **September 20, 2021**, Barry Winer asked, "What happens if the SEC doesn't issue the letter within the next two months?" and Kidrin dodged the question, stating only that they expected "a no further comments letter shortly." (See Exhibit 6E).

c.    Money laundering (18 U.S.C. § 1956) Concealing investment funds and failing to report them to regulators.

    a   SEC filings from **2021 and 2022**, including Form 10-K and **SEC Form 10-Q filed on November 15, 2021**, openly disclosed the investment but also detailed how Defendant Thom Kidrin misappropriated funds for self-use (See Exhibit 13). Further analysis of these filings reveals multiple suspicious transactions suggesting **misappropriation of investor funds**, including:

        i  - **$198,558** of the raised capital used to pay **CEO Thom Kidrin's accrued salary**.
        ii  - **$133,605** issued as a **loan to Thom Kidrin from the company**.
        iii  - **$75,000** allocated to **CFO Chris Ryan's salary**.
        iv  - **$200,000** transferred to **"Worlds Inc."**, a company where both **Thom Kidrin and Chris Ryan** held executive positions, suggesting **self-dealing**.

       v - **$300,000+** recorded as **consulting fees** with **no disclosure** of recipients or services provided, raising concerns of **shell company payments or money laundering**.

  b  Defendant Kidren suspiciously discharged a $230,000 mortgage on his private residence located at 11 Royal Road, Brookline, Massachusetts, 02445 on 11/17/2021 same year he received $550,000.00 from plaintiff and other investors May/June 2021.

       i  The mortgage had been on this property since 2012 and after 9 years was suspiciously discharged that year. (exhibit 15)

17, Plaintiff and other investors delayed legal action due to fear of retaliation and ongoing misrepresentations from Defendants. (Exhibit 6L)

## V. CLAIMS FOR RELIEF:

**COUNT I: Violation of Civil RICO (18 U.S.C. § 1962):**

18. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

19, Defendants engaged in a pattern of racketeering activity, as defined under 18 U.S.C. § 1961(1), by committing multiple acts of wire fraud (18 U.S.C. § 1343), securities fraud (15 U.S.C. § 78j & SEC Rule 10b-5), and money laundering (18 U.S.C. § 1956), which are predicate offenses under 18 U.S.C. § 1962.

20. Defendants operated an enterprise within the meaning of 18 U.S.C. § 1961(4), consisting of corporate entities and individual actors working together to execute a fraudulent scheme. This enterprise engaged in interstate commerce through financial transactions, electronic communications, and SEC filings.

21. Defendants used electronic communications, including emails, wire transfers, and SEC filings, to advance their fraudulent scheme, thereby violating 18 U.S.C. § 1343 (wire fraud).

22. As a direct and proximate result of Defendants' fraudulent activities, Plaintiff suffered substantial financial harm, including the loss of investment capital, lost business opportunities, and diminished investment returns.

23. Pursuant to 18 U.S.C. § 1964(c), Plaintiff is entitled to treble damages and injunctive relief.

**COUNT II: Securities Fraud (15 U.S.C. § 78j & SEC Rule 10b-5):**

24. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

25. Under 15 U.S.C. § 78j(b) and SEC Rule 10b-5 (17 C.F.R. § 240.10b-5), it is unlawful to employ deceptive or manipulative devices in connection with the purchase or sale of securities.

26. Defendants made material misrepresentations and omissions regarding:

a. The registration and tradability of shares;

b. The financial condition of the enterprise; and

c. The use of investor funds for purposes inconsistent with their representations.

27, Defendants knowingly and intentionally made these misrepresentations with the intent to deceive Plaintiff and induce him into making a financial investment.

28, Plaintiff reasonably relied on these misrepresentations, believing that the investment was legitimate and properly registered with regulatory authorities.

29, As a direct and proximate result of Defendants' fraudulent conduct, Plaintiff suffered significant financial losses, including the loss of investment funds and the inability to liquidate shares due to misrepresentations about their tradability.

30, Plaintiff is entitled to compensatory damages and rescission of the investment agreement.

**COUNT III: Fraudulent Inducement:**

31, Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

32. Fraudulent inducement occurs when a party knowingly makes false statements of material fact with the intent to deceive another party into entering a contract or transaction.

33. Defendants knowingly and intentionally made false representations, including but not limited to:

a. The legitimacy and value of the investment;

b. The financial stability of the enterprise; and

c. The availability of returns based on fraudulent projections.

34. Defendants concealed material facts, including their failure to properly report and disclose investment funds, improper handling of financial statements, and use of investor funds for undisclosed purposes.

35. Defendants made these misrepresentations and omissions with the intent to induce Plaintiff into making an investment, knowing that Plaintiff would not have entered the agreement had the truth been disclosed.

36. Plaintiff justifiably relied on these misrepresentations in making his investment decision.

37. As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff suffered economic harm, loss of capital, and lost investment opportunities.

**COUNT IV: Breach of Fiduciary Duty:**

38. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

39. Corporate officers and directors owe fiduciary duties to investors, including the duty of loyalty, duty of good faith, and duty of disclosure.

40. Defendants, as corporate officers and controlling members of the enterprise, had a fiduciary duty to act in the best interests of investors, including Plaintiff.

41. Defendants breached their fiduciary duties by:

a. Engaging in fraudulent financial misrepresentations;

b. Failing to disclose material financial risks;

c. Diverting and misusing investor funds for undisclosed purposes; and

d. Withholding truthful information from Plaintiff and other investors.

42,Defendants' actions were willful, intentional, and in bad faith, demonstrating a reckless disregard for Plaintiff's rights and financial interests.

43,As a direct and proximate result of Defendants' breaches of fiduciary duty, Plaintiff suffered financial damages, including the loss of investment capital and diminished investment returns.

44,Plaintiff is entitled to compensatory damages and punitive damages.

**COUNT V: Declaratory Judgment on Unenforceability of Arbitration Clause:**

45,Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

46,Under 9 U.S.C. § 2 (Federal Arbitration Act), an arbitration clause is unenforceable if it is procured by fraud, duress, or unconscionable terms.

47,The arbitration clause in the investment agreement is unenforceable because:

a. It was included as part of a fraudulently induced investment contract;

b. Defendants intentionally misrepresented material facts to induce Plaintiff's consent; and

c. The terms are grossly one-sided and unfair, limiting Plaintiff's ability to seek judicial remedies for fraud.

48,Defendants cannot enforce arbitration because they engaged in fraudulent and deceptive conduct in securing Plaintiff's investment.

49. Plaintiff seeks a judicial declaration that the arbitration clause is unenforceable and void, allowing Plaintiff to pursue his claims in court.

50. Plaintiff is entitled to a declaratory judgment, injunctive relief, and any other relief deemed appropriate by the Court.

### VI. PRAYER FOR RELIEF:

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and award:

A. Compensatory damages in an amount to be determined at trial.

B. Treble damages under 18 U.S.C. § 1964(c) (Civil RICO).

C. Rescission of the investment agreement and return of $375,000.

D. Punitive damages for Defendants' willful misconduct.

E. Declaratory relief invalidating the arbitration clause.

F. Any additional relief the Court deems just and proper.

Dated: this 17 day March, 2025

Respectfully submitted,

ALBERT SHEELER
14 Boxwood Street,
East Hampton, NY 1193